# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| DBG GROUP INVESTMENTS, LLC § | |
| § | |
| § | |
| v.  § | CIVIL ACTION NO. 3:21-CV-678-S |
| § | |
| § | |
| PURADIGM, LLC § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Puradigm, LLC's Motion to Dismiss Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") [ECF No. 19]. The Court has reviewed and considered Plaintiff DBG Group Investments, LLC's Amended Complaint [ECF No. 13]; the Motion to Dismiss; Plaintiff, DBG Group Investments, LLC's Response to Defendant Puradigm, LLC's Motion to Dismiss Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Response") [ECF No. 27]; and Defendant Puradigm, LLC's Reply Brief in Support of its Motion to Dismiss Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Reply") [ECF No. 29].

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.

### I.  BACKGROUND

This is an action for trade secret misappropriation and unfair competition relating to competing air purification products. Plaintiff operates an air purification business which centers on its "ActivePure" technology. Am. Compl. ¶ 15. Plaintiff acquired the rights to ActivePure technology—also known as "Radiant Catalytic Ionization" ("RCI")—in 2009, when it purchased

the assets of a company called Ecoquest Manufacturing, Inc. ("Ecoquest"). *Id.* ¶¶ 15-16. RCI is the tradename for a "photocatalytic technology that actively purifies air by using ultraviolet light directed at panels that have been coated with a blend of photocatalytic material, including metals." *Id.* The Amended Complaint defines Plaintiff's trade secret as the specific formulation used by Plaintiff in RCI: "the mixing instructions, formulation and application of the quad-metallic coating to the honeycomb matrix inside of [Plaintiff's] air purification products," *id.* ¶ 37, including "the relative proportions of metallic ingredients" used in the coating, *id.* ¶ 15.

Plaintiff claims that prior to the 2009 acquisition, Ecoquest had always maintained the trade secret's confidentiality, including by limiting employees' access to the formula and requiring employees to execute confidentiality agreements. *Id.* ¶ 17. Plaintiff maintains that it has continued to take similar measures to ensure the information is kept secret. *Id.* ¶ 18. Shortly after the 2009 acquisition, however, several former Ecoquest employees allegedly defected to start Puradigm, Defendant's competing air purification business. Plaintiff alleges that one former employee named Allen Johnston "scrubbed his computer of all its data including all company files, metadata, and access information" before resigning at Plaintiff's company and going on to serve as Defendant's Chief Technology Officer. *Id.* ¶ 20.

According to Plaintiff, Defendant has since used and continues to use this allegedly stolen data and proprietary information for various purposes. Plaintiff asserts that Defendant is making false claims in the marketplace regarding Plaintiff's products and technology, which leads customers to believe that Plaintiff's products are inferior to Defendant's. *Id.* ¶ 28. Plaintiff further claims that Defendant has sold and continues to sell products "incorporating, premised on, or building on" Plaintiff's technology. *Id.* ¶ 24. In addition, Plaintiff alleges that Defendant references data, graphics, and research relating to Plaintiff's technology in Defendant's marketing

materials to promote its own products, even though the allegedly misappropriated information relates only to Plaintiff's technology and does not support the efficacy of Defendant's products. *Id.* ¶¶ 22-23. Specifically, Plaintiff claims that it has "significantly invested in third-party research and independent studies" supporting the efficacy of its products, including a research paper published by Kansas State University stating that Plaintiff's ActivePure technology "substantially reduces microbial populations on surfaces" (the "KSU Study"). *Id.* ¶ 22; Am. Compl. Ex. 1. While the KSU Study was allegedly "never intended to be applicable to any other manufacturer's products," Plaintiff claims that Defendant copied data and graphics from the KSU Study to promote its products and advertises the KSU Study as support for Defendant's technology on its website. *Id.* ¶ 23; Am. Compl. Ex. 2.

Based on these allegations, Plaintiff brings causes of action for (1) trade secret misappropriation in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) trade secret misappropriation in violation of the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE, Ch. 134A; (3) unfair competition and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) and common law unfair competition. The Amended Complaint also seeks injunctive relief, punitive damages, and attorneys' fees. Defendant moves to dismiss the Amended Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Id.*

### III.   ANALYSIS

#### A.   *Trade Secret Misappropriation (Counts I and II)*

Plaintiff asserts claims for trade secret misappropriation under the federal Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"). Because the DTSA and TUTSA are both based on the Uniform Trade Secrets Act, "a substantial number of provisions in the two statutes—including the definition of 'trade secret'—are either identical or very similar

4

in many respects." *Phazr, Inc. v. Ramakrishna*, No. 3:19-CV-01188-X, 2020 WL 5526554, at *3 (N.D. Tex. Sept. 14, 2020) (quoting *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 332–33 (E.D. Tex. 2019)) (quotation marks omitted).

The federal DTSA permits an "owner of a trade secret that is misappropriated" to bring a civil action "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Accordingly, to state a DTSA claim, "a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce." *Phazr*, 2020 WL 5526554, at *3 (quoting *Marek Bro. Sys., Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162, at *3 (N.D. Tex. July 24, 2019)) (internal quotation marks omitted).[1] TUTSA requires a similar showing of the existence of a trade secret that was misappropriated, but does not require use in interstate commerce. *See* TEX. CIV. PRAC. & REM. CODE §§ 134A.002, 134A.004.

Both the DTSA and TUTSA define "trade secret" to include scientific and technical information, such as "any formula [or] design," that (1) the owner has taken reasonable measures to keep secret and (2) derives independent economic value from not being generally known or readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3); TEX. CIV. PRAC. & REM. CODE § 134A.002(6). Whether something is a trade secret is generally a question of fact. *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016) (citing *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013)).

Similarly, "misappropriation" under both statutes includes (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," and (2) "disclosure or use of a trade secret of another without express or implied

---

[1] The Fifth Circuit has yet to address what is required to recover under the DTSA. *See Dunster Live, LLC v. LoneStar Logos Mgmt. Co., LLC*, 908 F.3d 948, 950 (5th Cir. 2018) (observing that while the appeal "is the first Defend Trade Secrets Act case that has reached our court," it "does not require us to decide anything about trade secrets").

consent by a person who used improper means to acquire knowledge of the trade secret," or had reason to know that the trade secret was derived using improper means. 18 U.S.C. § 1839(5); TEX. CIV. PRAC. & REM. CODE § 134A.002(3). "Improper means" includes theft, misrepresentation, and "breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A); TEX. CIV. PRAC. & REM. CODE § 134A.002(2).

Applying the facial plausibility standard of *Twombly* and *Iqbal*, and accepting all well-pleaded facts as true and viewed in the light most favorable to Plaintiff, the Court concludes that Plaintiff has asserted plausible claims for trade secret misappropriation under both the DTSA and TUTSA. The Amended Complaint alleges the existence of a trade secret, i.e. "the process underlying DBG's ActivePure technology, specifically the mixing instructions, formulation and application of the quad-metallic coating to the honeycomb matrix inside of [Plaintiff's] air purification products," Am. Compl. ¶ 37, and details the specific policies and measures employed by Plaintiff to protect the trade secret's confidentiality, *id.* ¶¶ 17-18, 38. It further alleges that Allen Johnston and other former Ecoquest employees acquired information regarding Plaintiff's proprietary formula and trade secret prior to joining Defendant's company, and that they now incorporate that formula and technology into Defendant's products. *Id.* ¶¶ 19-21, 24, 40. Finally, it alleges that the technology at issue is used in interstate commerce. *Id.* ¶ 39. At the pleading stage, these facts are sufficient to state claims for trade secret misappropriation under the twin state and federal statutes. Defendant's Motion to Dismiss is thus denied as to Counts I and II.

### B.   *Lanham Act § 43(a) (Count III)*

Section 43(a) of the Lanham Act imposes liability on any person who, in commercial advertising or promotion, makes "false or misleading representations of fact" as to the "nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or

commercial activities." 15 U.S.C. § 1125(a)(1)(B). To make out a *prima facie* case under § 43(a), a plaintiff must establish five elements:

> (1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (citations omitted). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Id.* (citation omitted). Accordingly, the first element of § 43(a) requires a plaintiff to "demonstrate that the advertisement was (1) literally false; or (2) likely to mislead and confuse customers." *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 375 (5th Cir. 2002) (citing *Pizza Hut*, 227 F.3d at 495).

The Amended Complaint alleges that Defendant used Plaintiff's "graphics, studies, and NASA certification labels" in connection with Defendant's own products, and that Defendant has made other false and misleading statements that are "likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval" of Defendant's products in violation of the Lanham Act. Am. Compl. ¶ 49. In support, Plaintiff relies on Defendant's allegedly "false and misleading statements about the connection between the [KSU Study] with its products and the efficacy and caliber of [Plaintiff's] products and technology." *Id.* ¶ 48. Plaintiff points to marketing material allegedly disseminated by Defendant incorporating graphics and analyses from the KSU Study as purported proof of the efficacy of Defendant's product, and a statement on Defendant's website that "Kansas State University has worked for years in the testing and validation of Puradigm Technology on the following types of pathogens, bacteria & virus." *Id.* ¶¶ 23, 25-26; Ex. 2. Plaintiff also alleges that Defendant falsely implies that its product is NASA

7

Certified Space Technology by using the same NASA seal included on Plaintiff's technology. *Id.* ¶ 27. Finally, Plaintiff asserts that these statements are either literally false or have the capacity to deceive consumers, and that customers have sent Plaintiff messages "disparaging its products and ActivePure technology." *Id.* ¶ 52; *see also id.* ¶ 28, Ex. 19 (listing statements by a customer regarding alleged inefficacy of Plaintiff's products).

Accepting all well-pleaded facts as true and viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff has asserted a plausible claim for violation of § 43(a) of the Lanham Act. Plaintiff pleads facts supporting inferences that Defendant made false or misleading statements about products used in interstate commerce, these statements were false and had the capacity to deceive a substantial segment of potential consumers, the deception is likely to influence and has influenced consumers' purchasing decisions, and Plaintiff has been injured by Defendant's conduct. *See Pizza Hut*, 227 F.3d at 495. Accordingly, Defendant's Motion to Dismiss is denied as to Count III.

### C. *Common Law Unfair Competition (Count IV)*

Defendant contends that Plaintiff's claim for common law unfair competition should be dismissed because it is preempted by TUTSA. In its Response, Plaintiff does not address the viability of its state law unfair competition claim, and rather argues that its Lanham Act claim is not preempted by TUTSA.[2] Resp. 13-14. While Plaintiff thus appears to concede this point, to the extent Plaintiff's common law unfair competition claim has not been abandoned, the Court finds that it is preempted by TUTSA.

TUTSA expressly "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE

---

[2] Defendant's Motion to Dismiss does not argue that Plaintiff's Lanham Act claim is preempted. *See also* Reply 5 ("Puradigm's Motion to Dismiss did not argue that the Lanham Act unfair competition claim was preempted.").

§134A.007(a). However, TUTSA does not preempt "other civil remedies that are not based upon the misappropriation of a trade secret." *Id.* §134A.007(b); *see also Richter v. Carnival Corp.*, 837 Fed. App'x. 260, 263 n.4 (5th Cir. 2020) ("In other words, all claims under Texas state law for misuse of trade secrets must be brought under TUTSA."). Accordingly, the question is whether Plaintiff's common law unfair competition claim is "based upon the misappropriation of a trade secret." The Court finds that it is.

As pleaded, the basis for Plaintiff's common law unfair competition claim is that Defendant's "actions, including the theft of [Plaintiff]'s proprietary technology, attempts to pass off [Plaintiff]'s technology as its own, and false statements regarding the efficacy of [Plaintiff]'s products, constitute unfair, unlawful, and fraudulent business practices." Am. Compl. ¶ 55. By its plain terms, the Amended Complaint seeks redress for Defendant's alleged theft of its "proprietary technology," which is expressly defined as a "trade secret" elsewhere in the Amended Complaint. *See id.* ¶¶ 17-20 (describing Plaintiff's "proprietary, trade-secret process" allegedly misappropriated by Defendant and former employees of Plaintiff); ¶ 37 ("The process underlying [Plaintiff]'s ActivePure technology. . . is a trade secret."). Based on these allegations, the Court finds that Plaintiff's common law unfair competition claim is based on the alleged misappropriation of a trade secret. Defendant's Motion to Dismiss is therefore granted as to Count IV.

### D.   *Remedies (Counts V-VII)*

Finally, Defendant asserts that Plaintiff's requests in Counts V, VI, and VII for punitive damages, injunctive relief, and attorneys' fees should be dismissed because "they are not claims for relief and are merely remedies." Mot. 6. However, because the Court finds that Plaintiff has plausibly alleged trade secret misappropriation and Lanham Act claims, as discussed above, dismissal of the requested remedies is not proper at this stage. And while Defendant asserts that

9

punitive damages "are prohibited by the Lanham Act," punitive or exemplary damages are recoverable under both TUTSA and DTSA upon a showing of willful and malicious misappropriation. 18 U.S.C. § 1836(b)(3)(C); TEX. CIV. PRAC. & REM. CODE § 134A.004(b). Accordingly, the Court denies Defendant's Motion to Dismiss as to Counts V, VI, and VII.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Puradigm, LLC's Motion to Dismiss Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 19] is **GRANTED IN PART** and **DENIED IN PART**. Count IV of the Amended Complaint is **DISMISSED**. Plaintiff has not sought leave to amend. While the Court questions the viability of any common law unfair competition claim in light of TUTSA's preemption provision, if Plaintiff wishes to amend, it must do so by filing an amended complaint by **March 4, 2022**. If an amended complaint is not filed by this date, this claim will be dismissed with prejudice.

**SO ORDERED.**

SIGNED February 2, 2022.

_/s/ Karen Gren Scholer_
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**